# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

| | |
|---|---|
| HOPE THOMAS, *on behalf of herself and others similarly situated*, <br><br> Plaintiffs, <br> v. <br><br> SINGLETON FOOD SERVICES, INC. d/b/a SUBWAY; and J. EDWARD SINGLETON, JR. <br><br> Defendants. | CIVIL ACTION NO. <br><br> 2:17-cv-00090-WCO <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Named Plaintiff Hope Thomas ("Named Plaintiff Thomas"), by and through undersigned counsel, brings this action on behalf of herself and others similarly situated against Singleton Food Services, Inc., ("Singleton Foods") and J. Edward Singleton Jr., (collectively "Defendants") and states and alleges as follows:

## NATURE OF THE ACTION

1. This is a collective action brought under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, ("FLSA"), alleging that Defendants failed to pay Named Plaintiff and others similarly situated at the federally-mandated minimum wage and overtime premium rate.

1

## JURISDICTION AND VENUE

2. The Court exercises jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 because the claims raise questions of federal law.

3. Venue is proper pursuant to 28 U.S.C. § 1391(b) and Local Rule 3.4 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the Gainesville Division of the Northern District of Georgia.

## PARTIES

4. Defendant Singleton Foods is a Georgia corporation with its principle office located at 772 Maddox Dr., Suite 126, East Ellijay, Georgia 30540, according to the Georgia Secretary of State.

5. Singleton Foods may be served with process through its registered agent, J. Edward Singleton, Jr., 772 Maddox Dr., Suite 126, East Ellijay, Georgia 30540.

6. Defendant J. Edward Singleton Jr. is the Chief Economic Officer and owner of Defendant Singleton Foods.

7. J. Edward Singleton may be served wherever he may be found.

8. Named Plaintiff and others similarly situated have worked for Defendants as hourly employees within the three years preceding the filing of this action.

9. Named Plaintiff consented in writing to join this action pursuant to 29 U.S.C. § 216(b). (*See* Exhibit 1.)

10. Other similarly situated individuals are interested in joining this action.

11. For example, opt-in Plaintiff Elain Chambers ("Opt-in Plaintiff Chambers"), Opt-in Plaintiff David Burmeister, Opt-in Plaintiff Maranda Burmeister, and Opt-in Plaintiff Heather Trillet filed consent forms to join this lawsuit. (*See* Exhibits 2, 3, 4, and 5.)

**FACTUAL ALLEGATIONS SHOWING THAT DEFENDANTS ARE JOINT EMPLOYERS**

12. Defendants are "employers" within the meaning of the FLSA, 29 U.S.C. § 203(d).

13. During the three years preceding the filing of this Complaint, Defendants employed Plaintiffs who engaged in interstate commerce or the production of goods for interstate commerce within the meaning of the FLSA.

14. For example, Named Plaintiff Thomas uses Defendants' computer systems, processes credit card transactions, and sells and prepares food made from ingredients that traveled through interstate commerce.

15. Defendant Singleton Foods is an enterprise whose annual gross sales or business done exceeds $500,000.

16. During the three years preceding the filing of this Complaint, Singleton Foods employed one or more employees who handle goods that have traveled in interstate commerce within the meaning of the FLSA.

17. Defendant Singleton Foods qualifies as an "employer" within the meaning of the FLSA.

18. "Subway" is a trade name used by Defendants.

19. Defendants Singleton Foods and J. Edward Singleton Jr. own and operate approximately 17 Subway sandwich restaurants located in Georgia and North Carolina.

20. For example, Defendants own and operate the Subway sandwich restaurant located at 88 Highland Crossing, East Ellijay, Georgia 30540 (the "88 Highland Crossing Subway").

21. Defendants also own and operate the Subway sandwich restaurant located at 500 Highland Crossing, East Ellijay, Georgia 30540 (the "500 Highland Crossing Subway").

22. Defendants currently employ Named Plaintiff Thomas as an hourly employee at the 88 Highland Crossing Subway restaurant.

23. Within the three years preceding the filing of this Complaint, Defendants also employed Named Plaintiff Thomas at the 500 Highland Crossing Subway restaurant.

24. Defendants employed Opt-in Plaintiff David Burmeister as an hourly employee at the 88 Highland Crossing Subway restaurant.

25. Defendants also employed Opt-in Plaintiff David Burmeister at the 500 Highland Crossing Subway restaurant.

26. The Subway sandwich restaurants owned and operated by Defendants are an enterprise operated for the common business purpose of selling food to customers.

27. Defendants' Subway sandwich restaurant enterprise is an enterprise engaged in commerce or the production of goods for commerce within the meaning of the FLSA.

28. During the three years preceding the filing of this Complaint, Defendant J. Edward Singleton Jr. exercised operational control over Defendants' Subway sandwich restaurants in Georgia and North Carolina, including the 88 Highland Crossing Subway and the 500 Highland Crossing Subway.

29. For example, Defendant J. Edward Singleton Jr. determined the compensation practices applicable to Defendants' employees at all of its Subway sandwich restaurants, including Plaintiffs.

30. Defendant J. Edward Singleton Jr. had the authority to make changes to the compensation practices applicable to Defendants' employees at all of its Subway sandwich restaurants, including Plaintiffs.

31. Defendant J. Edward Singleton Jr. had the authority to hire and fire employees of Defendants' Subway sandwich restaurants, including Plaintiffs.

32. Defendant J. Edward Singleton Jr. determined the employment policies applicable to all employees of Defendants' Subway sandwich restaurants, including Plaintiffs.

33. Defendant J. Edward Singleton Jr. maintained the employment records of the employees working at Defendants' Subway sandwich restaurants.

34. Defendant J. Edward Singleton Jr. is an employer within the meaning of the FLSA.

35. Defendant J. Edward Singleton Jr. employed Plaintiffs within the meaning of the FLSA.

36. Plaintiffs are or were "employees" of Defendants within the meaning of the FLSA 29 U.S.C. § 203(e).

37. Defendants J. Edward Singleton and Singleton Foods jointly employed Plaintiffs within the meaning of the FLSA.

**FACTUAL ALLEGATIONS IN SUPPORT OF
PLAINTIFFS' CLAIMS**

38. Defendants own and operate approximately 17 Subway sandwich restaurants located in Georgia and North Carolina.

39. Named and Opt-in Plaintiffs are individuals who are, or have been, employed by Defendants as hourly employees at one or more of Defendants' Subway sandwich restaurants located in Georgia and North Carolina within the three years preceding the filing of this Complaint ("Hourly Employees").

40. Hourly Employees' job duties consist of preparing and cooking food items; running the cash registers; taking orders from customers; and preparing the Subway sandwich restaurants for opening and closing, among other things.

41. Defendants use a timekeeping system to track the hours worked by Hourly Employees.

42. Defendants pay Hourly Employees an hourly wage for their hours worked.

43. For example, Defendants pay Named Plaintiff Hope Thomas $8.00 per hour for certain hours worked.

44. Defendants paid Opt-in Plaintiff David Burmeister $7.25 per hour for certain hours worked.

45. However, Defendants subject the Hourly Employees at all of their Subway Sandwich restaurants to common illegal policies and practices that result in Hourly Employees receiving less than $7.25 for all hours worked.

46. Defendants subject the Hourly Employees at all of their Subway Sandwich restaurants to common illegal policies and practices that result in Hourly Employees receiving less than 1.5 times their regular hourly rate for all hours worked over 40 in a workweek.

47. For example, Defendants subject all Hourly Employees to an illegal pay policy of only compensating Hourly Employees for the hours they are scheduled to work, as opposed to the hours actually worked by Hourly Employees.

48. Hourly Employees typically work hours in excess of those they are scheduled to work.

49. For example, Hourly Employees who are scheduled to open Defendants' stores are scheduled to arrive at Defendants' stores thirty minutes prior to opening to prepare the store for the days' operation by performing job duties such as baking bread and preparing the ingredient to be used in making sandwiches.

50. However, it often takes Hourly Employees more than 30 minutes to prepare Defendants' stores for opening.

51. Because it takes Hourly Employees more than 30 minutes to prepare Defendants' stores for opening, Hourly Employees arrive at Defendants' stores prior to the start of their scheduled shifts to begin preparing Defendants' stores for opening.

52. Defendants know that Hourly Employees arrive prior to the start of their scheduled shift to begin preparing the stores for opening.

53. However, Hourly Employees are not allowed to clock into Defendants' timekeeping system while performing these duties prior to the start of their scheduled shifts.

54. Instead, Hourly Employees must wait until the start of their scheduled shifts to clock into Defendants' timekeeping system.

55. Hourly Employees receive no wages for the hours worked prior to the start of their scheduled shift.

56. By way of further example, Hourly Employees who are scheduled to close Defendants' stores are required to complete certain "side jobs" such as cleaning Defendants' store and preparing Defendants' store for the next day's customers before Hourly Employees are permitted to leave for the day.

57. However, Defendants provide Hourly Employees a specified amount of time within which to complete their side jobs.

58. It typically takes Hourly Employees longer than the time provided by Defendants to complete their side jobs.

59. Defendants know that it typically takes Hourly Employees longer than the time provided by Defendants to complete their side jobs.

60. However, Defendants do not pay Hourly Employees for any time spent performing their side jobs in addition to the time provided by Defendants.

61. This practice results in Hourly Employees receiving no wages for certain hours worked.

62. By way of further example, Hourly Employees are often required to work past the end of their scheduled shift due to customer demand.

63. Defendants know that Hourly Employees often work past the end of their scheduled shifts.

64. When Hourly Employees are required to work past the end of their scheduled shifts, Hourly Employees are only compensated for the hours they were scheduled to work.

65. When Hourly Employees work past the end of their scheduled shifts, Hourly Employees receive no wages for the hours worked after their shift was scheduled to end.

66. For example, on at least one occasion, Opt-In Plaintiff Chambers was required to work past the end of her scheduled shift because Ms. Chambers' store manager left the store and did not return until after Opt-in Plaintiff Chamber's shift had ended.

67. Opt-in Plaintiff Chambers had no choice but to continue working past the end of her scheduled shift because she was the only employee at the store.

68. However, Defendants removed the hours Opt-in Plaintiff Chambers worked past the end of her scheduled shift.

69. Opt-in Plaintiff Chambers received no wages for the hours worked past the end of her scheduled shift.

70. By way of final example of Defendants' illegal pay policy of only compensating Hourly Employees for the hours they are scheduled to work, in April 2017, Defendants put up a sign at the 88 Highland Crossing Store notifying Hourly Employees of Defendants' policy of only paying Hourly Employees for the hours they are scheduled to work.

71. The sign instructs Hourly Employees to clock out of the timekeeping system when their shift is scheduled to end because they will only be paid for hours on the schedule.

72. A true and correct copy of this sign is attached as Exhibit 6.

73. The common illegal pay practice of not paying Hourly Employees for hours worked in addition to their scheduled hours is applicable to all Hourly Employees working at Defendants' stores, including crew members, store managers and assistant store managers.

74. For example, Opt-in Plaintiff Heather Trillet worked for Defendants as a crew member, assistant store manager and store manager.

75. Opt-in Plaintiff Trillet was paid an hourly wage for certain hours worked while employed as a crew member, store manager and assistant manager.

76. Opt-in Plaintiff Trillet worked hours in excess of her scheduled hours as a crew member, assistant store manager and store manager.

77. Opt-in Plaintiff Trillet was not paid for the hours she worked in addition to her scheduled hours as a crew member, store manager and assistant store manager.

78. This common unlawful pay practice applicable to all Hourly Employees results in Hourly Employees receiving no wages for certain hours worked.

79. Some of the hours worked by Hourly Employees that Defendants remove and for which Hourly Employees receive no wages are hours worked over 40 in a workweek.

80. For example, as a store manager and assistant store manager, Opt-in Plaintiff Trillet worked between 50 and 60 hours per week.

81. However, Opt-in Plaintiff Trillet was not compensated at 1.5 times her regular rate of pay for all hours worked over 40 in certain workweeks.

82. Defendants' illegal policy of only compensating Hourly Employees for the hours they are scheduled to work results in Hourly Employees receiving less than 1.5 times their regular hourly rate for all hours worked over 40 in a workweek.

83. Due to Defendant's policy of removing certain hours from Hourly Employees' time records, and not recording certain hours worked by Hourly Employees, Defendants violated the recordkeeping requirements of the FLSA.

**COUNT I: WILLFUL FAILURE TO COMPENSATE PLAINTIFFS AT THE REQUIRED MINIMUM WAGE**

84. Defendants pay Hourly Employees, including Plaintiffs, an hourly wage for certain hours worked.

85. However, Defendants fail to compensate Hourly Employees for all hours worked at the required minimum wage of $7.25 per hour.

86. Defendants remove hours from Hourly Employees' time records such that Hourly Employees do not receive at least $7.25 per hour for all hours worked.

87. Defendants require Hourly Employees to perform work – such as preparing the stores for opening and closing – while off the clock and pay Hourly Employees no wages for certain hours worked.

88. Defendants knew or should have known that Plaintiffs worked hours for which they received no wages.

89. By failing to compensate Hourly Employees at the required federal minimum wage, Defendants violated, and continue to violate, Hourly Employees' rights under the FLSA.

90. Defendants' violation of the FLSA's minimum wage provision is willful.

91. Defendants violated, and continue to violate, the FLSA with reckless disregard for their obligations under the FLSA.

92. Pursuant to 29 U.S.C. §216(b), Defendants are liable to Hourly Employees for all unpaid wages at a rate not less than $7.25 per hour, liquidated damages in an amount equal to their unpaid wages, attorney fees and costs.

# COUNT II: WILLFUL FAILURE TO PAY HOURLY EMPLOYEES AT THE REQUIRED OVERTIME PREMIUM RATE

93. Hourly Employees work hours in excess of 40 during certain workweeks.

94. However, Defendants fail to compensate Hourly Employees for all hours worked, including those over 40 per workweek.

95. Defendants fail to compensate Hourly Employees at not less than 1.5 times their regular rate of pay for all hours worked over 40 in a workweek.

96. Defendants knew or should have known that Hourly Employees worked hours in excess of 40 per workweek for which they were not compensated at 1.5 times their regular rate of pay.

97. Defendants' violation of the FLSA demonstrates a reckless disregard for Hourly Employees' right under federal law.

98. Defendants' violation of the FLSA's overtime provisions is willful.

99. Pursuant to 29 U.S.C. § 216(b), Defendants are liable to Hourly Employees for unpaid overtime wages, liquidated damages, attorney fees and costs.

## DEMAND FOR JUDGMENT

Plaintiffs respectfully requests that the Court:

(a) Declare that Defendants' actions, policies, and practices complained of herein violate the rights of Plaintiffs as secured by federal law;

(b) Enter judgment against Defendants that their violations of the FLSA were willful;

(c) Award all unpaid wages;

(d) Award liquidated damages in an amount equal to Plaintiffs' unpaid wages;

(e) Award reasonable attorney fees, costs, and expenses; and

(f) All other relief to which Plaintiffs may be entitled.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38, Plaintiffs demand a trial by jury.

Respectfully submitted: 5/10/2017

|  |  |
|---|---|
|  | *s/Dustin L. Crawford* |
| POOLE HUFFMAN LLC | Dustin L. Crawford |
| 315 W. Ponce de Leon Ave. | Georgia Bar No. 758916 |
| Suite 344 | John L. Mays |
| Decatur, Georgia 30030 | Georgia Bar No. 986574 |
| Telephone: (404) 855-3002 |  |
| Facsimile: (404) 855-4066 |  |
| dustin@poolehuffman.com | Counsel for Plaintiffs |
| john@poolehuffman.com |  |