**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

| | |
|---|---|
| HOPE THOMAS, *on behalf of herself And others similarly situated*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CASE NO: 2:17-cv-0090-RWS |
| | ) |
| SINGLETON FOOD SERVICES, INC., d/b/a SUBWAY; AND EDWARD SINGLETON, JR. | ) ) ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## <u>JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT AND TO DISMISS WITH PREJUDICE</u>

Named Plaintiff Hope Thomas, on behalf of herself and others similarly situated (collectively with the Opt-In Plaintiffs, "Plaintiffs"), and Defendants Singleton Food Services, Inc. d/b/a Subway ("Singleton Foods") and Edward Singleton, Jr. ("Mr. Singleton") (collectively referred to herein as "Defendants") (Plaintiffs and Defendants are referred to collectively as the "Parties") respectfully move for approval of their settlement agreement, attached as **Exhibit A** (the "Agreement"). A proposed Order is attached for the Court's convenience as **Exhibit B**. The Parties submit that the Agreement is fair and reasonable and, therefore, due to be approved.

## I.    Background

### A.    Factual and Procedural Overview

This is a collective action for unpaid wages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "FLSA"). Singleton Food is a Georgia corporation, headquartered in East Ellijay, Georgia. Singleton Food operates a small chain of Subway restaurants in Georgia and North Carolina. Mr. Singleton is the sole owner of Singleton Food. Mr. Singleton has significant health issues that have impacted his ability to operate Singleton Food in recent years.

Plaintiffs are current and former Singleton Food employees. In May 2017, Thomas filed this lawsuit, alleging that Defendants willfully violated the FLSA by implementing a policy of paying employees only for the hours they were scheduled to work as opposed to the time they actually spent working. [Doc. 1]. Plaintiffs allege that Defendants' pay policy was implemented in several ways that resulted in unpaid minimum and overtime wages. For example, Plaintiffs allege that when they work and record hours for which they are not scheduled, Defendants manually remove the unscheduled hours from Plaintiffs' time records. Furthermore, Plaintiffs allege that Defendants frequently required them to work off the clock for no wages at all. On May 11, 2017, Plaintiff Thomas filed her First Amended

Complaint adding a claim for retaliation in violation of the FLSA. [Doc. 3].[1]

In their Answer to Plaintiffs' First Amended Complaint [Doc. 14], Defendants denied liability and raised several affirmative defenses. They alleged that Plaintiffs had been paid for all hours worked, that Defendants made good-faith efforts to comply with the FLSA, that Defendants did not know, nor have reason to know, that Plaintiffs worked off the clock, and that any unpaid hours were either non-compensable or *de minimis*, and that any potential violation was not willful.

On July 13, 2017, Plaintiff Thomas filed her Motion requesting conditional certification of this matter as a collective action. [Doc. 19]. Defendants opposed such certification. However, on November 13, 2017, the Court conditionally certified the lawsuit as a collective action. [Doc. 39]. One hundred and sixty-eight (168) former and current Singleton Food employees opted into the lawsuit.

The notice period closed in February 2018. Ultimately, 168 current and former Singleton Food employees opted into the collective action. Throughout the notice period, Plaintiffs' counsel expended significant time and resources ensuring

---

[1] After Named Plaintiff Thomas filed her Amended Complaint alleging retaliatory discharge, the Parties worked out a resolution to that dispute and Defendants agreed to allow Ms. Thomas to return to work within days. Thus, Ms. Thomas' damages resulting from the alleged retaliatory discharge are admittedly small. Nonetheless, part of Ms. Thomas' settlement amount includes payment for her release of the retaliation claim.

that all potential class members had been notified of the case, communicating with potential class members, evaluating the merits of their claims and calculating potential damages, and compiling, tracking, and filing consent forms.

Defendants produced voluminous timekeeping and payroll records as well as associated data, such as audit trails. Plaintiffs' counsel reviewed and analyzed this data themselves, and they retained a highly regarded attorney and damages consultant, Jeff Kerr, to assist with their damages calculations and the estimation of class members' overtime claims.[2]

On June 28, 2018, the Parties mediated Plaintiffs' claims with Magistrate Judge Catherine M. Salinas. The Parties did not reach a settlement at this mediation.

On November 3, 2018, Singleton Food filed for bankruptcy protection (In Re:  Singleton Food Services, Inc., Debtor, Case No. 18-22157, Chapter 11, United States Bankruptcy Court, Northern District of Georgia). Such bankruptcy proceeding is currently pending in bankruptcy court.

Singleton Foods' bankruptcy filing required Plaintiffs counsel to expend additional time and resources that are not typically necessary in FLSA litigation.

---

[2] Mr. Kerr has significant experience analyzing and processing electronic data, such as time and pay records.

For example, Plaintiffs' lead counsel, Mr. Crawford, had to essentially teach himself bankruptcy law to continue prosecuting Plaintiffs' claims in the District Court as well as the Bankruptcy Court. As all Plaintiffs in this action are now creditors of Singleton Foods, Plaintiffs' counsel prepared and filed a class proof of claims in the bankruptcy proceeding on behalf of the class members. Plaintiffs counsel also associated with outside bankruptcy counsel to assist in the prosecution of Plaintiffs' claim in the bankruptcy court.

On November 21, 2019, the Parties mediated the claims a second time, this time with U.S. Bankruptcy Court Judge Paul W. Bonapfel serving as mediator. This mediation likewise did not result in a settlement of Plaintiffs' claims. However, after the mediation concluded, the Parties continued to discuss a potential settlement.

Following extensive arm's-length negotiations, the Parties reached the settlement that produced the Agreement now being presented to this Court for approval. The Parties agreed to the settlement because the Parties recognized that an outcome in litigation was uncertain, and even a fully successful outcome for any of the Parties would entail substantial additional time, risk, and expense.

## B.    The Parties' Settlement Agreement

In the Agreement, Defendants agreed to pay a gross settlement amount of

four hundred thousand dollars ($400,000.00). Due to Singleton Foods' current financial condition, the settlement proceeds will be paid over a period of two years, as follows: (1) $150,000 within fourteen (14) days of this Court's and the Bankruptcy Court's approval of the settlement; (2) $60,000 by August 1, 2021; (3) $60,000 by December 15, 2021; (4) $45,000 by April 1, 2022; (5) $45,000 by August 1, 2022; and (6) $40,000 by December 1, 2022. In consideration for those payments, which will be distributed as described below, Plaintiffs agreed to dismiss this action with prejudice and to provide Defendants with a limited release of claims arising under the FLSA, as asserted in their First Amended Complaint. However, the Parties request that the Court retain jurisdiction over this matter to enforce the settlement agreement until the settlement proceeds are paid in full.

      1.   <u>Funds Distributed to the Plaintiffs</u>

Of the gross settlement proceeds, two hundred seventeen thousand three hundred sixty-seven dollars ($217,367.00) ("Plaintiffs' Distribution") will be distributed to Plaintiffs as back wages and liquidated damages. Plaintiffs' Distribution represents a fair and reasonable compromise over disputed issues, such as FLSA coverage and the extent of Plaintiffs' damages. First, Plaintiffs' Distribution was calculated using a three year—as opposed to a two year—statute of limitations which is reserved for willful violations of the FLSA. Thus, Plaintiffs'

Distribution assumes a willful violation of the FLSA with a three-year statute of limitations, even though Defendants vigorously deny that Plaintiffs will be able to establish that the alleged violations were willful if this case proceeds through discovery and to trial.

Second, Plaintiffs' damages are based on two theories of recovery: (1) that Defendants removed hours from Plaintiffs' time records; and (2) that Defendants required Plaintiffs to work hours off-the-clock for no wages. By using the program created by Plaintiffs' expert, Plaintiffs' counsel was able to identify each time Defendants removed an hour from Plaintiffs' time records. Plaintiffs' Distribution compensates each Plaintiff *for every hour* that was removed from Plaintiffs' time records, plus an equal amount in liquidated damages. This is significant for two reasons. First, Defendants maintain that there were legitimate reasons for removing certain hours from Plaintiffs' time records because Plaintiffs were not working during the hours that were removed. Despite this disagreement between the Parties, in a good-faith effort to resolve this case, the Parties agreed to compensate Plaintiffs for all removed hours, regardless of whether the hours were removed for a legitimate purpose. This represents a significant victory for Plaintiffs because there is no guarantee that Plaintiffs will be compensated for each removed hour if this case proceeds through discovery and to trial. Second, Plaintiffs are receiving

full liquidated damages for all hours removed. Again, this is not a result to which Plaintiffs are guaranteed if this case were to proceed.

In addition to removed hours, each Plaintiff is being compensated for an average of two hours off the clock each week for a three-year statutory period. This represents a significant win for the Plaintiffs, as again, there is no guarantee that the Plaintiffs will be able to prove a willful violation and recover three years' worth of off-the-clock damages. Furthermore, there are always inherent risks in proving that a plaintiff worked hours for which there are no time records or other documents showing the number of hours worked. Thus, while Plaintiffs allege that they worked more hours off the clock, Plaintiffs prefer to settle the case with a guaranteed recover of approximately 2 hours off the clock each week. Finally, it is unlikely that each Plaintiff will be able to prove that he or she worked off the clock in every week over the past three years. As Plaintiffs' Distribution compensates Plaintiffs for alleged off-the-clock work each week, regardless of whether each Plaintiff worked off-the-clock hours in each workweek, Plaintiffs Distribution represents a fair and reasonable compromise over disputed issues of Plaintiffs' damages.  Plaintiffs' Distribution also provides for full liquidated damages for Plaintiffs' off-the-clock hours; a result Plaintiffs are not guaranteed to obtain if this case proceeds.

2.    Plaintiffs' Attorneys' Fees and Expenses of Litigation

Of the settlement proceeds, one hundred eighty-two thousand six hundred thirty-three dollars ($182,633.00) is allocated to cover expenses of litigation and attorney's fees. This amount is less than Plaintiffs' counsel is entitled to under their contingency fee agreement with the Plaintiffs, which provides that counsel is entitled to the greater of: (1) 40% of the total recovery; or (2) counsel's time in the case multiplied by their hourly rates. The fee counsel is to receive under the Settlement Agreement represents a percentage of counsel's loadstar attorney's fees, which is considerably less than the actual time and expenses Plaintiffs' counsel has expended litigating this case. To date, Plaintiffs' counsel has expended over $230,000 in attorney time and expenses (excluding the time and expense necessary to administer the settlement over the next two years) preparing the action to be filed, corresponding with class members, researching and analyzing the claims, drafting pleadings and correspondence (including a contested Motion for Conditional Class Certification and oral argument with respect to Plaintiffs' motion), analyzing documents and data produced by Defendants, computing damages, preparing for mediation and conducting negotiations, and— importantly—prosecuting Plaintiffs' claim in the bankruptcy court upon Singleton Foods' Chapter 11 filing. Despite counsel's work, and the fact they are entitled to

additional fees under their fee agreement, counsel has agreed to accept less that

they are entitled in attorney's fees to help foster resolution of this dispute.

## II.    The Court Should Approve the Parties' Settlement Agreement

### A.    Legal Standard for Approval of FLSA Settlements

Because the FLSA's provisions are mandatory and generally "not subject to

negotiation or bargaining between employers and employees," *Lynn's Food Stores,*

*Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982), employees can settle

or compromise claims arising under the FLSA only if the settlement is supervised

by the Department of Labor or approved by a federal district court. *Anthony v.*

*Concrete Supply Co.*, No. 3:16-cv-70-TCB, 2017 WL 5639933, *1 (N.D. Ga. Aug.

23, 2017) (citing *Lynn's Food Stores*, 679 F.2d at 1353); *accord Silva v. Miller*,

307 F. App'x 349, 351 (11th Cir. 2009).

The Court's role in supervising an FLSA settlement is to scrutinize the

settlement agreement to determine whether it is a fair and reasonable resolution of

a bona fide dispute, or alternatively, whether it results from an employer's use of

its superior bargaining position to take advantage of its employees. *Lynn's Food*

*Stores*, 679 F.2d at 1354–55; *Rakip v. Paradise Awnings Corp.*, 514 F. App'x 917,

919–20 (11th Cir. 2013). Where a settlement reflects "a reasonable compromise

over issues, such as FLSA coverage or computation of back wages, that are

actually in dispute," the court may "approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354.

In reviewing FLSA settlements, courts in this judicial district "often apply a two-step approach," asking first "whether the compromise is fair and reasonable to the employee," and second "whether the compromise otherwise impermissibly frustrates implementation of the FLSA . . ." *Anthony*, 2017 WL 5639933 at *1 (citing *Dees v. Hydradry, Inc.*, 706 F. Supp.2 d 1227, 1241 (M.D. Fla. 2010)). Factors that courts consider when evaluating whether a settlement is fair and reasonable include the following:

(1)    the existence of fraud or collusion behind the settlement;

(2)    the complexity, risk, expense, and likely duration of the litigation;

(3)    the stage of the proceedings and the amount of discovery completed;

(4)    the strength of the plaintiff's case and the probability of plaintiff's success on the merits;

(5)    the range of possible recovery; and

(6)    the opinions of the counsel.

*George v. Academy Mortgage Corp. (UT)*, 369 F. Supp. 3d 1356, 1369 (N.D. Ga. 2019). Furthermore, the fact that employees in an FLSA lawsuit are "represented

by an attorney who can protect their rights under the statute" makes it "more likely" that the proposed settlement reflects "a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching." *Lynn's Food Stores*, 679 F.2d at 1354.

When evaluating the reasonableness of the proposed settlement, the Court must be mindful of the strong presumption in favor of finding a settlement fair, particularly when, as in this case, the Parties are represented by competent counsel. *Mannino v. Anderson-Collisions, Inc*., No. 607-cv-1853, 2008 WL 2857061, at *2 (M.D. Fla. July 22, 2008). Indeed, "If the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable. Rarely will the Court be in a position to completely declare that such a settlement is 'unreasonable.'" *Dees v. Hydradry, Inc*., 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010).

In addition to reviewing the Plaintiffs' recovery under an FLSA settlement agreement, the "FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva*, 307 F. App'x at 351. The FLSA provides for a mandatory award of "a reasonable attorney's fee to be paid by the defendant." 29

U.S.C. § 216(b). Whether fees are to be computed based on Plaintiffs' counsel's lodestar (i.e., the multiplication of counsel's reasonable hourly rates by the hours reasonably expended on the case) or as a contingency of the overall recovery, "the Court's duty is to assess the reasonableness of such fees under the circumstances." *Aguirre v. S. Fla. Multispecialty Assocs., LLC*, No. 14-CIV-21660-BLOOM/Valle, 2014 WL 12539725, *1 (S.D. Fla. Aug. 19, 2014); *accord Brenowitz v. Implant Seminars, Inc.*, No. 17-20184-CIV-GOODMAN, 2017 WL 3438879, *2 (S.D. Fla. 2017); *Nawaz v. Dade Med. Coll. Inc.*, No. 15-24129-CIV-LENARD/GOODMAN, 2017 WL 11220371, at *2 (S.D. Fla. Aug. 29, 2017), *R&R adopted at* 2017 WL 11220372 (Sept. 29, 2017).

Whether a proposed attorney's fee award is reasonable "will depend on the specifics of the particular case." *Brenowitz*, 2017 WL 3438879 at *2. Factors courts have looked to when making this determination include, without limitation, the following:

1. The amount of risk assumed by plaintiffs' counsel, *Brenowitz*, 2017 WL 3438879 at *3, including risks associated with any affirmative defenses asserted by the defendants, *id.* at *4, or any "genuine coverage and computation issues in dispute," *id.* at *5;

2. The time and effort expended by plaintiffs' counsel in pursuing the claims, and the extent to which their work on this case prevented them from working on other matters, *Nawaz*, 2017 WL 11220371 at *4;

3. The results obtained by plaintiff's counsel, *Nawaz*, 2017 WL

11220371 at *4;

4.     Whether "a plaintiff is sacrificing a portion of his unpaid wages recovery to fund plaintiff's attorney's fees," *Brenowitz*, 2017 WL 3438879 at *3;

5.     Whether the plaintiff has consented to the amount that he is to receive under the settlement, after the award of attorneys' fees, *Aguirre*, 2014 WL 12539725 at *1;

6.     Whether the record shows that the plaintiff agreed to a contingency fee agreement when retaining counsel, *Brenowitz*, 2017 WL 3438879 at *3;

7.     Whether any contingency fee sought "falls within the range of the private marketplace, where contingency-fee arrangements are often between 30 and 40 percent of any recovery," *George*, 369 F. Supp.3d at 1382; and

8.     Whether the relationship of any contingency fee to be awarded relative to plaintiffs' counsel's lodestar is reasonable, *Brenowitz*, 2017 WL 3438879 at *4.

**B.     Analysis of the Settlement Agreement in This Case**

In this case, the Parties' Settlement Agreement meets the foregoing requirements for fairness and reasonableness in all respects and furthers the policies and implementation of the FLSA.

1.     The Settlement Is Fair and Reasonable to Plaintiffs.

The Agreement reflects the compromise of a *bona fide* dispute and allows both parties to avoid significant risk associated with proceeding with litigation. Defendants have denied liability and asserted numerous affirmative defenses that,

if meritorious, could eliminate or significantly limit the ability of some or all Plaintiffs to secure meaningful recoveries under the FLSA. *George*, 369 F. Supp. 3d at 1371 (approving settlement as reasonable where there were "risks attending [the plaintiffs'] claims" and a "certainty of substantial delay and expense from ongoing litigation").

Moreover, many of Plaintiffs' claims are contingent on their ability to prove that they worked a threshold number of off-the-clock hours. Plaintiffs' counsel has evaluated documents provided by both Defendants and Plaintiffs and concluded that questions remain with respect to Plaintiffs' ability to prove liability and the full extent of damages claimed. *Id.* at 1370–71 (noting that settlement allowed the parties to avoid "difficult and time-consuming" litigation, and that Plaintiffs' counsel had access to sufficient information, before negotiating, to allow them to make a reasoned judgment about "the probability of success, the possible range of recovery, and the likely expense and duration of the litigation"). There was no collusion in reaching the Agreement, which was the product of good-faith, arm's-length negotiations between competent counsel who are experienced in litigating FLSA claims. *Id.* at 1369–70 (noting that "prolonged adversarial litigation and negotiations," including "mediation with an experienced mediator" and continued post-mediation negotiations, demonstrate "the absence of fraud or collusion behind

the Settlement" and weigh in favor of approval).

The terms of the Settlement Agreement are fair to the class members. After significant correspondence about the scope of Plaintiffs' claims, the settlement, and the release, the Agreement presented for consideration contains only a limited release of claims "arising under the Fair Labor Standards Act." Agreement at ¶ 2. Plaintiffs are not releasing any other claims they might have against Defendants, nor are they waiving or releasing any prospective rights. *Cf. Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1350–51 (M.D. Fla. 2010) (concluding that a pervasive, general release is unfair in the context of the FLSA, and refusing to approve a settlement that required the plaintiffs to release "a dizzying array of claims, known and unknown, against the defendant"); *see also George*, 369 F. Supp. 3d at 1366 (approving settlement containing only a limited release).

Importantly, there is no confidentiality or non-disclosure provision in the Agreement. *Cf. Anthony*, 2017 WL 56339933 at *1–*2 (noting that "[p]ermitting confidential settlements of FLSA claims thwarts the informational purpose of the statute," and refusing to approve an otherwise reasonable settlement "because of the confidential nature of the agreement"). In sum, in consideration for Defendants' payment of the settlement proceeds, Plaintiffs are not making any non-monetary concessions other than agreeing to the limited release and dismissal

of the lawsuit.

        2.    <u>The Monetary Payments are Fair and Reasonable.</u>

As just described, the decision to resolve this case via settlement rather than proceeding to trial after years of complex and expensive litigation was reasonable given the risks that Defendants might prevail on one or more of their affirmative defenses or that Plaintiffs might not be able to prove all the facts necessary to prevail on the merits of all their claims and secure the highest possible recovery. Despite these risks, however, the Settlement Agreement generously compensates Plaintiffs.

Under the terms of this settlement, every Plaintiff will be compensated for all hours removed from their time records, plus an equal amount in liquidated damages, regardless of the alleged reason for the time removal. As previously noted, Defendants maintain they were justified in removing hours from Plaintiffs' time records because Plaintiffs were not working during the hours that were removed. Thus, if Defendants are successful, Plaintiff *might not recover any unpaid wages* for the removed hours. Furthermore, Plaintiffs are compensated based on a three-year statute of limitations, reserved for willful violations of the FLSA, even though the parties dispute whether the Plaintiffs will be able to establish that any alleged violation of the FLSA was willful.

Plaintiffs also receive compensation for approximately two (2) hours worked off the clock each week for the three-year statute of limitations. This is significant because, again: (1) Plaintiffs are not guaranteed to prove a willful violation and receive a three-year statute of limitations; and (2) Defendants maintain that Plaintiffs worked no hours off the clock for which they are entitled to compensation. Thus, if Defendants are successful in their defense, Plaintiffs could receive *no damages* for their alleged off-the-clock work. The average recovery per Plaintiff is approximately $1,278.63. Considering that some Plaintiffs worked for Singleton Food for only a matter of days or weeks, the Parties agree that this is an eminently reasonable outcome for the class.

3.   <u>The Attorneys' Fees and Costs Are Reasonable on the Facts of This Case.</u>

Finally, the Settlement Agreement contemplates that Plaintiffs' counsel will be awarded $182,633 in attorney's fees and expenses.

Named Plaintiff Thomas agreed to a contingency fee agreement that provides for fees calculated as the greater of either: (1) counsel's time in the case multiplied by their hourly rates; or (2) forty percent of the gross recovery. The contingency called for is "within the range of the private marketplace, where contingency-fee arrangements are often between 30 and 40 percent of any recovery." *George*, 369. F. Supp. 3d at 1382.

The firm structured it fee agreement this way precisely because of the significant risk it was taking on by litigating this case. The prospective class was over 1,000 people, and as noted above, approximately 200 individuals joined the case as Plaintiffs. Indeed, as explained previously, Singleton Foods filed for Chapter 11 bankruptcy, which significantly expanded the work that Plaintiffs' counsel had to perform in this case.

The firm is small, with only ten full-time attorneys, and the time that these attorneys dedicated to this case, including prosecuting Plaintiffs' claims in the bankruptcy proceeding, prevented them from handling other matters. Importantly, the firm's efforts produced a settlement that both parties agree is reasonable, and that compensates Plaintiffs for all the time removed from their time records and a significant portion of their claimed off-the-clock hours, plus liquidated damages. Finally, the amount paid to the class as unpaid wages and liquidated damages was determined separately from counsel's fees, thus ensuring that the Plaintiffs are not being asked to sacrifice any portion of their alleged unpaid wages to fund attorney's fees. *See, e.g., Bonetti v. Embarq Mgmt. Co*., 715 F. Supp. 2s 1222, 1228 (M.D. Fla. 2009) (when attorney's fees are agreed to without regard to the amount paid to the plaintiffs, "then, unless the settlement does not appear reasonable on its face," the court should approve the settlement without separately

evaluating the attorney's fees for reasonableness.)

Plaintiffs' counsel's lodestar fee is currently more than $230,000, not including any work related to administering the settlement over the next two years. Nevertheless, Plaintiffs' counsel does not seek to recover the full value of its loadstar fee, even though the fee agreement permits a fee calculation on an hourly basis, and the loadstar amount is greater than what counsel is receiving under the Settlement Agreement. Plaintiffs' counsel agreed to accept less than they are entitled to foster settlement of this case.

"The reasonableness of the contingency arrangement will depend on the specifics of the particular case." *Brenowitz*, 2017 WL 3438879, at *2. Under all the circumstances of this case, the requested fee, which is less than counsel's full loadstar, is reasonable and fair and should be approved.

## III. Conclusion

For the foregoing reasons, the Parties jointly request that this Court grant the instant motion and approve their Settlement Agreement and retain jurisdiction over this matter until the settlement proceeds are paid in full.

Respectfully submitted: March 15, 2021.

CONSENTED TO BY:

_s/ Dustin L. Crawford_
Dustin L. Crawford
Ga Bar No. 758916
John L. Mays
Ga Bar No. 986574
PARKS, CHESIN, & WALBERT PC
75 14th Street N.E.
26th Floor
Atlanta, Georgia 30309
dcrawford@pcwlawfirm.com
jmays@pcwlawfirm.com
Telephone: 404-873-8000
Facsimile: 404-873-8050
**_Counsel for Plaintiffs_**

_s/Daniel C. Kniffen_
Daniel C. Kniffen
GA Bar No. 425380
DKniffen@deflaw.com
Meredith Riggs Guerrero
GA Bar No. 214274
MGuerrero@deflaw.com
DREW ECKL & FARNHAM, LLP
303 Peachtree Street, NE
Suite 3500
Atlanta, GA 30308
Telephone: (404) 885-1400
Facsimile:  (404) 876-0992
**_Counsel for Defendants_**